No. 25-30111

---

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,
v.

MIGUEL KEELEN,
*Defendant-Appellant*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CR-38-1

---

**APPELLANT'S BRIEF**

---

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

STEVEN E. SPIRES
Research and Writing Attorney
Office of the Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
steven_spires@fd.org

# CERTIFICATE OF INTERESTED PERSONS

*United States v. Miguel Keelen*
No. 25-30111

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. *Defendant-Appellant:* Miguel Keelen.

2. *Counsel for Defendant-Appellant:* Federal Public Defender Claude J. Kelly; Research and Writing Attorney Steven E. Spires; Assistant Federal Public Defender Samuel J. Scillitani, Jr.

3. *Former Counsel for Defendant-Appellant:* n/a

4. *Counsel for Plaintiff-Appellee:* Acting United States Attorney Michael Simpson; Assistant United States Attorneys Kevin G. Boitmann, James N. Ollinger, and Megan Roberts.

5. *Former Counsel for Plaintiff-Appellee*: Assistant United States Attorneys Diane Hollenshead Copes and Nicholas Rayburn.

*/s/ Steven E. Spires*
STEVEN E. SPIRES
Research and Writing Attorney
Dated: August 25, 2025

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Keelen does not request oral argument. He acknowledges that his challenges to his conviction are currently foreclosed in this Circuit and raises them here to preserve them for further review.

Additionally, his challenge to supervised release conditions is straightforward and apparent from the record, and the only necessary relief is to vacate conditions of supervised release in the written judgment that conflict with the district court's oral pronouncement and remand for entry of amended judgment, which is relief mandated under clear, well-established precedent. Accordingly, oral argument is not necessary.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................ii

STATEMENT REGARDING ORAL ARGUMENT ................................ iii

TABLE OF AUTHORITIES....................................................................vi

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE ISSUES............................................................2

STATEMENT OF THE CASE ...............................................................3

SUMMARY OF THE ARGUMENT .......................................................7

ARGUMENT ...........................................................................................8

I. 18 U.S.C. § 922(g)(1) is unconstitutional under the Second Amendment, both facially and as applied to Mr. Keelen [foreclosed]. ........................................................8

A. Legal Framework........................................................8

B. Section 922(g)(1) is unconstitutional...........................14

C. The error impacted Mr. Keelen's substantial rights and warrants correction by this Court. .......................16

II. 18 U.S.C. § 922(g)(1) is unconstitutional because it exceeds Congress's power to regulate interstate and foreign commerce [foreclosed]...........................................17

III. The district court's written judgment conflicts with its oral pronouncement of supervised release conditions and must be amended. ......................................................23

A. Standard of Review....................................................24

B. Legal Framework......................................................24

C. The district court failed to orally pronounce "the standard conditions," and, therefore, they must be stricken from the written judgment. .......................... 28

D. Even if the standard conditions had been validly pronounced, the written judgment and the PSR still impermissibly conflict. .......................................... 29

E. The special search condition in the written judgment must be conformed to match the oral pronouncement. ......................................................... 30

CONCLUSION ........................................................................................ 31

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Alderman v. United States*, 562 U.S. 1163, 1166 (2011) .................. 18, 19
*Dist. of Columbia v. Heller*, 554 U.S. 570 (2008) .................................... 8
*Industrial Union Dept., AFL-CIO v. American Petroleum Institute*, 448 U.S. 607 (1980) .................................................................... 20
*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .................................. 9
*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) . 19, 20, 21, 22
*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022).... 9, 10, 11, 12
*Scarborough v. United States*, 431 U.S. 563, 575 (1977)........... 18, 21, 22
*United States v. Alcantar*, 733 F.3d 143 (5th Cir. 2013) ........................ 18
*United States v. Bigelow*, 462 F.3d 378 (5th Cir. 2006).................... 27, 30
*United States v. Castillo*, No. 19-10649, 2021 WL 42375534 (5th Cir. Sept. 16, 2021) (unpublished) ............................................................ 30
*United States v. Chavez*, No. 20-50550, 2022 WL 767033 (5th Cir. Mar. 14, 2022) (unpublished) ........................................................ 26, 28
*United States v. Connelly*, 117 F.4th 269 (5th Cir. 2024).......... 10, 11, 15
*United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) ............ 8, 12, 13, 14
*United States v. Diggles*, 957 F.3d 551, 560 (5th Cir. 2020) (en banc).. 24, 25, 27
*United States v. Hill*, 927 F.3d 188 (4th Cir. 2019)................................ 18
*United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025) .............. 8, 13, 14
*United States v. Knowles*, 29 F.3d 947 (5th Cir. 1994)..................... 16, 23
*United States v. Kuban*, 94 F.3d 971 (5th Cir. 1996) ............................ 18
*United States v. Lopez*, 514 U.S. 549 (1995)........................ 17, 18, 19, 22
*United States v. Martinez*, 47 F.4th 364 (5th Cir. 2022) (*"Alexander Martinez"*)............................................................ 24, 25, 26, 28
*United States v. Mireles*, 471 F.3d 551 (5th Cir. 2006) ......................... 27
*United States v. Morgan*, No. 24-30561, 2025 WL 2233205 (5th Cir. Aug. 6, 2025)...................................................................... 8, 14
*United States v. Morrison*, 529 U.S. 598 (2000) ................................... 22
*United States v. Prado*, 53 F.4th 316 (5th Cir. 2022)................ 27, 28, 29
*United States v. Rahimi*, 602 U.S. 680 (2024) ............................... passim
*United States v. Reyna*, 80 F.4th 628 (5th Cir. 2023)............................ 24
*United States v. Schnur*, 132 F.4th 863 (5th Cir. 2025)........................ 12

*United States v. Seekins*, No. 21-10556, 2022 WL 3644185 (5th Cir. Aug. 24, 2022) .......... 17, 18
*United States v. Toure*, 965 F.3d 393 (5th Cir. 2020) .......... 8, 17

**STATUTES**

18 U.S.C. § 3231 .......... 1
18 U.S.C. § 3583(d) .......... 25
18 U.S.C. § 3742 .......... 1
18 U.S.C. § 922(g)(1) .......... passim
28 U.S.C. § 1291 .......... 1

**OTHER AUTHORITIES**

Joseph G. S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249 (2020) .......... 16

## STATEMENT OF JURISDICTION

This appeal is from the final judgment in a criminal case. Judgment was imposed on January 30, 2025. ROA.103, ROA.104-09. The government filed a timely notice of appeal on February 26, 2025. ROA.110. Appellant Miguel Keelen filed a timely notice of appeal on March 6, 2025. ROA.112. The district court had jurisdiction over this criminal proceeding under 18 U.S.C. § 3231. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

(1) Is 18 U.S.C. § 922(g)(1) unconstitutional under the Second Amendment—either facially or as applied—requiring vacatur of Mr. Keelen's conviction and dismissal of his indictment? [foreclosed]

(2) Is 18 U.S.C. § 922(g)(1) unconstitutional under the Commerce Clause, requiring vacatur of Mr. Keelen's conviction and dismissal of his indictment? [foreclosed]

(3) Does the district court's written judgment conflict with its oral pronouncement of supervised release conditions, requiring that the written judgment be amended to conform to the oral pronouncement?

## STATEMENT OF THE CASE

On March 8, 2024, defendant-appellant Miguel Keelen was charged in a single-count indictment with possessing a firearm after being convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1). ROA.8-9. The indictment alleged that Mr. Keelen had prior convictions for possession with the intent to distribute marijuana, cocaine, and fentanyl; criminally negligent discharge of a firearm; and attempted possession of a firearm by a felon. *Id.* The indictment also alleged that the firearm possessed had been in and affecting interstate commerce. *Id.*

Mr. Keelen pleaded guilty to the charge without the benefit of a plea agreement. ROA.51; ROA.127-39. In the factual basis supporting his plea, he admitted to having prior felony convictions as alleged in the indictment and admitted that the firearm he subsequently possessed was manufactured in another state and was therefore shipped in interstate commerce. ROA.52-55. The district court imposed a sentence of 75 months, followed by three years of supervised release. ROA.103; ROA.104-09; ROA.140-52.

Its its oral pronouncement of sentence, the district court recited five supervised release conditions.[1] The court then stated that Mr. Keelen also "[s]hall comply with the standard conditions of supervised release including the following special conditions," and recited three more conditions. These included a search condition: "[T]he defendant shall submit his person, residence, office and vehicle to a search conducted by the United States Probation Officer at a reasonable time in a reasonable matter and on reasonable suspicion." ROA.149-50.[2] The district court's written judgment, however, included thirteen additional conditions that were unpronounced. ROA.106.

Mr. Keelen's Presentence Report ("PSR") contained two lists of conditions under the headings "Standard Conditions of Supervision" and "Special Conditions of Supervision." ROA.200-01. In imposing supervised release conditions at sentencing, however, the district court did not adopt or refer to either list. *See* ROA.149-50.

---

[1] The five conditions were (1) report in person to the Probation Office within 72 hours of release from BOP; (2) not commit any federal, state, or local crime; (3) be prohibited from possessing a firearm, ammunition, destructive device, or any other dangerous weapon; (4) not possess a controlled substance; and (5) cooperate in the collection of a DNA sample. ROA.149.

[2] The other two conditions concerned (1) cognitive behavioral therapy, and (2) high school equivalency diploma and vocational training.

Additionally, the conditions in the district court's written judgment deviated in numerous ways from both the court's oral pronouncement and the lists of conditions in the PSR. ROA.106-07.

*First*, the written judgment added three entirely new conditions that did not appear anywhere else:

- "the defendant shall support his or her dependents and meet other family responsibilities"
- "the defendant shall refrain from excessive use of alcohol"
- "the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered"

ROA.106 (standard conditions four, seven, and eight).

*Second,* the written judgment included conditions related to residence and employment that were meaningfully different from similar conditions in the PSR:

- Omitting "[i]f notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change" from the requirement that Mr. Keelen "shall notify the probation officer at least ten days prior to any change in residence or employment."

*Compare* ROA.200 (paragraphs 110 & 112) *with* ROA.106 (standard condition six).

*Third*, the written judgment added a new unpronounced requirement to the search condition:

- "The defendant shall warn any other residents or occupants that the premises may be subject to searches pursuant to this condition."

*Compare* ROA.150 *with* ROA.107 (special condition three).

The government filed a timely notice of appeal. ROA.110. Mr. Keelen then filed a timely notice of cross-appeal. ROA.112. The government has since dismissed its appeal. *See* Dkt. Nos. 35 & 36. Mr. Keelen now appeals (1) his conviction, and (2) the district court's imposition of supervised release conditions. He does not challenge his sentence of incarceration.

## SUMMARY OF THE ARGUMENT

Mr. Keelen's sole conviction in this case is for a violation of 18 U.S.C. § 922(g)(1). That conviction must be reversed because § 922(g)(1) violates both the Second Amendment and the Commerce Clause. Mr. Keelen acknowledges that his constitutional challenges are currently foreclosed and raises them here to preserve them for further review.

Even if this Court upholds Mr. Keelen's conviction, however, his sentence must be vacated in part and his case remanded for entry of an amended judgment because numerous supervised release conditions in the district court's written judgment conflict with its oral pronouncement at sentencing. That conflict arose in two ways. First, the district court failed to orally pronounce thirteen standard conditions of supervised release that were later contained in the written judgment. Those conditions must be stricken entirely. Second, one of the special conditions in the written judgment—the search condition—contained an added requirement that conflicted with the court's oral pronouncement of the condition. That condition must be conformed.

## ARGUMENT

### I. 18 U.S.C. § 922(g)(1) is unconstitutional under the Second Amendment, both facially and as applied to Mr. Keelen [foreclosed].

Mr. Keelen's conviction must be vacated and his indictment dismissed because 18 U.S.C. § 922(g)(1)—both facially and as applied to Mr. Keelen—violates the Second Amendment. Mr. Keelen recognizes that both issues are currently foreclosed by circuit precedent and raises them here to preserve for further review. *See United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024) (foreclosing facial challenge); *United States v. Kimble*, 142 F.4th 308 (5th Cir. 2025) (foreclosing as-applied challenge); *United States v. Morgan*, No. 24-30561, 2025 WL 2233205 (5th Cir. Aug. 6, 2025) (same). A constitutional challenge to a defendant's statute of conviction is reviewed for plain error when, as here, the challenge is raised for the first time on appeal. *United States v. Toure*, 965 F.3d 393, 399 (5th Cir. 2020).

*A. Legal Framework*

In *Dist. of Columbia v. Heller*, the Supreme Court held that the Second Amendment codifies an individual right to possess and carry weapons. 554 U.S. 570, 628 (2008). As the Court has repeatedly stressed,

"the right to keep and bear arms is among the 'fundamental rights necessary to our system of ordered liberty.'" *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010)).

In *NYSPRA v. Bruen*, the Supreme Court explained that the framework for analyzing the constitutionality of firearm regulations is rooted in the Second Amendment's text and history, and expressly abrogated the means-end scrutiny framework previously adopted by this Court and its sister circuits, making clear that "means-end scrutiny" has no role to play in the Second Amendment context. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 19-24 (2022). Under *Bruen*, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17, 24. "The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 24. In other words, to pass Second Amendment muster, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19.

In *United States v. Rahimi*, the Supreme Court reaffirmed that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition" and explained that "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" 602 U.S. at 692 (quoting *Bruen*, 597 U.S. at 29) (alteration in original). "Why and how the regulation burdens the right are central to this inquiry." *Id.*

As this Court explained post-*Rahimi*, "'[w]hy' and 'how' a regulation burdens the right presents two separate questions." *United States v. Connelly*, 117 F.4th 269, 273 (5th Cir. 2024). As to "why": "if laws at the Founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category." *Id.* at 274 (quoting *Rahimi*, 602 U.S. at 692). As to "how": "a law . . . may not be compatible with the right if it [is regulated] to an extent beyond what was done at the Founding[,]" "*even when [that] law regulates arms-bearing for a permissible reason.*" *Id.* (quoting *Rahimi*, 602 U.S. at 692) (alterations

and emphasis in original). Importantly, "[t]he challenged and historical laws are 'relevantly similar' if they share a common 'why' and 'how': they must *both* (1) address a comparable problem (the 'why') *and* (2) place a comparable burden on the right holder (the 'how')." *Id.* (emphasis added).

Critically, "[i]t is the government's burden to demonstrate that the challenged regulation is 'relevantly similar' to laws our tradition is understood to permit . . . by finding and explicating 'historical precursors' supporting the challenged law's constitutionality." *Connelly*, 117 F.4th at 274 (citations omitted). While the government may rely on "analogous historical regulation[s]" and need not identify a "historical twin," a court must always "hold the government to its heavy burden, as the Second Amendment 'is *not* a second-class right.'" *Id.* (quoting *Bruen*, 597 U.S. at 70) (emphasis in original). This means that there are limits to analogical reasoning, as the Supreme Court cautioned in *Bruen*: "[A]nalogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check." 597 U.S. at 30. Thus, "courts should not 'uphold every modern law that remotely resembles a historical analogue,' because doing so 'risk[s] endorsing outliers that our

ancestors would never have accepted.'" *Id.* (quoting *Drummond v. Robinson*, 9 F.4th 217, 226 (3d Cir. 2021)) (alteration in original).

Following *Bruen* and *Rahimi*, this Court has explicitly held that persons convicted of felonies—like Mr. Keelen—are among "the people" protected by the Second Amendment and that "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)." *Diaz,* 116 F.4th at 466-67; *see also United States v. Schnur*, 132 F.4th 863, 867 (5th Cir. 2025) ("As to [*Bruen*'s] first inquiry, [the appellant] is unequivocally among 'the people' protected by the Second Amendment."). "Thus, the burden now rests with the Government to show that regulating [Mr. Keenan's] possession of a firearm is 'consistent with the Nation's historical tradition' of disarming someone with a criminal history analogous to his." *Schnur*, 132 F.4th at 867 (quoting *Bruen*, 597 U.S. at 24); *see also Diaz*, 116 F.4th at 467.

To satisfy its burden under *Diaz*, the government must (1) establish "a historical tradition of permanently punishing certain offenders who the evidence shows would have been considered felons and exposed to [capital punishment and/or permanent estate forfeiture] at the time of the Founding," *and* (2) show that "[d]isarming [a particular defendant]

fits within this tradition" by using historical evidence "specifically targeted to [the defendant's] circumstances" (like "colonial-era laws") to demonstrate that his modern-day felony convictions are analogous to Founding-era felonies punishable by death or permanent estate forfeiture. *Diaz*, 116 F.4th at 469-70; *see also id.* at 469 ("Simply classifying a crime as a felony does not meet the level of historical rigor required by *Bruen* and its progeny.").

In *Kimble*, this Court held that defendants with felony drug distribution priors can be disarmed pursuant to a historical tradition of disarming classes of dangerous people. 142 F.4th at 318 ("Kimble's predicate convictions for drug trafficking convey that he belongs to a class of dangerous felons that our regulatory tradition permits legislatures to disarm."); *id.* at 315-16 & n.13 (citing "English laws disarming political and religious dissidents and American statements and practices suggesting that dangerous individuals could lose their Second Amendment rights"). In doing so, the Court deviated from the *Diaz* framework, even acknowledging that the government was not able in that case to bring forth analogous Founding-era felonies to carry its burden under *Diaz*. *See Kimble*, 142 F.4th at 312-14 ("In short, the

government's proffered historical analogues are not 'relevantly similar' to the modern state and federal drug-trafficking laws underlying Kimble's predicate felony convictions.").

*B. Section 922(g)(1) is unconstitutional.*

As admitted in the factual basis, Mr. Keelen has prior felony convictions for (1) possession with the intent to distribute controlled substances; (2) criminally negligent discharge of a firearm; and (3) attempted possession of a firearm by a felon. ROA.54. Mr. Keelen respectfully submits, however, that § 922(g)(1) is unconstitutional as applied to him because there is not a historical tradition of permanently disarming people like him. Though this challenge is current foreclosed in this Circuit, Mr. Keelen submits that *Diaz*, *Kimble*, and *Morgan* were wrongly decided and seeks to preserve this issue for further review.

Though also currently foreclosed by *Diaz*, Mr. Keelen further seeks to preserve for further review that § 922(g)(1) is also facially unconstitutional because there is no historical support for *permanently* prohibiting firearm possession by all felons. *See Rahimi*, 602 U.S. at 692 ("Even when a law regulates arms-bearing for a permissible reason . . . it may not be compatible with the right if it does so to an extent beyond

what was done at the founding."); *see also Connelly*, 117 F.4th at 274. Rather, the historical evidence shows that the type of regulation contained in § 922(g)(1) is wholly inconsistent "with the principles that underpin our regulatory tradition," and therefore the statute violates the Second Amendment. *Rahimi*, 602 U.S. at 692.

For example, as the Supreme Court explained in *Rahimi*, surety laws and "going armed" laws establish a regulatory tradition of "temporary" disarmament, but only after a judicial determination that the person posed a credible threat to the physical safety of others. *Rahimi*, 602 U.S. at 697-99. Further, according *Rahimi*, a person subject to a surety bond received "significant procedural protections" and, importantly, "could obtain an exception if he needed his arms for self-defense or some other legitimate reasons." *Id.* at 697. "Many postfounding going armed laws" incorporated similar exceptions. *See id.* at 769 (Thomas, J., dissenting). Not so for § 922(g)(1).

Additionally, people who were temporarily disarmed for political or religious reasons in the Founding Era "could often regain their rights once they were no longer perceived as dangerous." Joseph G. S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from*

*Possessing Arms*, 20 Wyo. L. Rev. 249, 250 (2020). Even "armed insurrectionists" regained their rights. *Id.* at 269. Again, not so for § 922(g)(1).

It was not until the 20th century that legislatures began to pass categorical, permanent firearms bans—eventually expanding those bans to include all persons who have ever been convicted of a criminal offense punishable by imprisonment for a term exceeding one year, i.e., "felons." *See* Greenlee at 272-75. Accordingly, § 922(g)(1)'s permanent firearm prohibition for all so-called "felons" violates the Second Amendment.

*C. The error impacted Mr. Keelen's substantial rights and warrants correction by this Court.*

Mr. Keelen received a 75-month prison sentence for his unconstitutional § 922(g)(1) conviction, and that conviction is the sole basis for his current incarceration. Therefore, there is no question that the error has affected his substantial rights and seriously affects the fairness and integrity of judicial proceedings. Indeed, Mr. Keelen is serving a years-long prison sentence based on an unconstitutional conviction for a statute that plainly violates Second Amendment protections. *See United States v. Knowles*, 29 F.3d 947, 951 (5th Cir. 1994). This Court should intervene.

## II. 18 U.S.C. § 922(g)(1) is unconstitutional because it exceeds Congress's power to regulate interstate and foreign commerce [foreclosed].

Additionally, while recognizing that the issue currently is foreclosed by circuit precedent, Mr. Keelen also raises to preserve for further review that § 922(g)(1) exceeds Congress's authority to regulate interstate and foreign commerce and that his factual basis failed to demonstrate the requisite interstate commerce nexus to support a valid conviction. *See United States v. Seekins*, No. 21-10556, 2022 WL 3644185, at *2 (5th Cir. Aug. 24, 2022) (unpublished) (summarizing precedent). This challenge too is reviewed for plain error. *Toure*, 965 F.3d at 399.

Article I, § 8 of the Constitution provides: "Congress shall have power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes …." In *United States v. Lopez*, the Supreme Court established the test for the scope of Congress's power to regulate activities that "affect" interstate commerce: "We conclude, consistent with the great weight of our case law, that the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." 514 U.S. 549, 559 (1995). *Lopez* seemed to, but did not expressly, overrule the more permissive test for federal

regulation of gun possession articulated in *Scarborough v. United States*, which required only the “minimal nexus that the firearm have been, at some time, in interstate commerce.” 431 U.S. 563, 575 (1977). A fair reading of *Scarborough* suggests that the case was concerned with statutory interpretation and did not purport to resolve any constitutional issues. *See Seekins*, 52 F.4th at 991 (Ho, J., dissenting from denial of rehearing en banc). This Court has adhered to the view that *Scarborough*’s “minimal nexus” is sufficient both to prove guilt under § 922(g)(1) and to bring any subsequent act of firearm possession within Congress’s power to regulate. *See, e.g., United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013).

Members of the Supreme Court and judges on lower courts have acknowledged the irreconcilability of *Lopez* and a constitutional reading of *Scarborough*. *See Alderman v. United States*, 562 U.S. 1163, 1166 (2011) (Thomas, J., dissenting from denial of certiorari); *United States v. Hill*, 927 F.3d 188, 215 n. 10 (4th Cir. 2019) (Agee, J., dissenting); *United States v. Kuban*, 94 F.3d 971, 977 (5th Cir. 1996) (DeMoss, J., dissenting in part). Indeed, if *Scarborough* is a constitutional decision, then it grants the federal government unlimited power to regulate the affairs of

citizens. *See Alderman*, 562 U.S. at 1167 (Thomas, J., dissenting from denial of certiorari) ("[T]he lower courts' reading of *Scarborough*, by trumping the *Lopez* framework, could very well remove any limit on the commerce power."). Any physical object has almost certainly crossed a state line at some point in the past. To hold that this past travel grants Congress a perpetual right to regulate what someone does or does not do with that object is to eliminate any restrictions on Congress's power. *See Nat'l Fed'n of Indep. Bus. v. Sebelius [NFIB]*, 567 U.S. 519, 557 (2012) ("The Commerce Clause is not a general license to regulate an individual from cradle to grave, simply because he will predictably engage in particular transactions.").

This unlimited power renders § 922(g)(1) facially unconstitutional. In *NFIB*, Chief Justice Roberts noted that "[a]s expansive as our cases construing the scope of the commerce power have been, they all have one thing in common: They uniformly describe the power as reaching 'activity.'" 567 U.S. at 551 (emphasis added). He reasoned that this limitation of Commerce Clause power to "activities" is a "distinction between doing something and doing nothing [which] would not have been lost on the Framers, who were 'practical statesmen,' not metaphysical

philosophers." *Id.* at 555 (quoting *Industrial Union Dept., AFL-CIO v. American Petroleum Institute*, 448 U.S. 607, 673 (1980) (Rehnquist, J., concurring in judgment)). Four other Justices echoed Chief Justice Roberts's sentiment regarding the Commerce Clause analysis, stating that Congress could only regulate "activity affecting commerce[.]" *NFIB*, 567 U.S. at 658 (Scalia, Kennedy, Thomas, Alito, JJ., dissenting).

Here, § 922(g)(1) does not require that Mr. Keelen's gun possession was an economic activity, and that ought to be fatal to his conviction. As explained by *NFIB*, the Commerce Clause permits Congress to regulate only activities, i.e., the active participation in a market. But § 922(g)(1) criminalizes all possession, without reference to economic activity. Accordingly, it sweeps too broadly.

Further, the statute does not require that Mr. Keelen be engaged in the relevant market at the time of the regulated conduct. Chief Justice Roberts noted that Congress cannot regulate a person's activity under the Commerce Clause unless the person affected is "currently engaged" in the relevant market. *NFIB*, 567 U.S. at 556, 557. As an illustration, the Chief Justice provided the following example: "An individual who bought a car two years ago and may buy another in the future is not

'active in the car market' in any pertinent sense." *Id.* at 556. As such, *NFIB* overrules the notion that a firearm which has previously passed through interstate commerce should be considered to affect commerce indefinitely without "concern for when the [initial] nexus with commerce occurred." *Scarborough*, 431 U.S. at 577.

Mr. Keelen's case illustrates how this Court's current precedent removes any limitation on Congress's commerce power. His indictment alleged that he "did knowingly possess a firearm . . . said firearm having been in and affecting interstate and foreign commerce." ROA.8-9. With respect to the mandated interstate commerce element, the factual basis stated only that the type of firearm possessed by Mr. Keelen is "not manufactured in Louisiana and, as a result, . . . necessarily had to travel in interstate commerce before [Mr. Keelen] possessed it." ROA.53. The factual basis did not establish, and the record contains no evidence, that Mr. Keelen traveled in interstate commerce to bring the firearm to Louisiana or even purchased the firearm from a vendor participating in interstate commerce.

Mr. Keelen thus was convicted under § 922(g)(1) without evidence that he was "currently engaged" in the gun market at the time of his

arrest, and without evidence showing how recently he came to possess the gun. So § 922(g)(1) fails to survive *NFIB*'s Commerce Clause analysis. The statute has previously been construed to require only that a firearm have traveled in interstate commerce at some previous time. *See Scarborough*, 431 U.S. at 575. If it cannot now be construed to require commercial activity of some kind by the defendant—something more substantial than mere possession of an item that crossed state lines at some unknown point—it then contains no jurisdictional element sufficient to bring it within the terms of Congressional power. In the absence of such a jurisdictional element, the Supreme Court has found federal criminal statutes falling substantially outside the commerce power to be unconstitutional, without pausing to consider whether the particular conduct of the defendant might have affected commerce. *See Lopez*, 514 U.S. at 561; *United States v. Morrison*, 529 U.S. 598, 607 (2000). In other words, without such an element, comparable statutes have been found facially unconstitutional.

Thus, Mr. Keelen's conviction must be reversed because § 922(g)(1) violates the Commerce Clause and is unconstitutional. Alternatively, if the statute can be interpreted in a manner that would avoid rendering it

unconstitutional, Mr. Keelen's factual basis is plainly insufficient because the mere fact that the gun at some point crossed state lines clearly falls outside the statute's constitutional limits. In either scenario, his conviction must be reversed. As explained previously, Mr. Keelen received a 75-month prison sentence for his unconstitutional § 922(g)(1) conviction, and that conviction is the sole basis for his current incarceration. Therefore, the error has also affected his substantial rights and seriously affects the fairness and integrity of judicial proceedings. *See Knowles*, 29 F.3d at 951.

## III. The district court's written judgment conflicts with its oral pronouncement of supervised release conditions and must be amended.

Independent of the foregoing constitutional errors concerning his conviction, multiple conditions of supervised release included in Mr. Keelen's written judgment conflict with the district court's oral pronouncement of conditions. Thus, under well-settled case law, even if Mr. Keelen's conviction and sentence is otherwise affirmed, this Court must vacate in part and remand for the district court to amend the written judgment to conform with its oral pronouncement of supervised release conditions.

*A. Standard of Review.*

Where, as here, the district court does not satisfy the pronouncement requirement when imposing sentence, and the defendant therefore did not have an opportunity to object to conditions of supervised release later included in a written judgment, this Court reviews for abuse of discretion. *United States v. Martinez*, 47 F.4th 364, 366 (5th Cir. 2022); *see also United States v. Diggles*, 957 F.3d 551, 560, 563 (5th Cir. 2020) (en banc) (tying the standard of review to the pronouncement requirement); *United States v. Reyna*, 80 F.4th 628, 630 (5th Cir. 2023) (explaining that this Court "cannot resolve . . . the appropriate standard of review until [it] determine[s] whether the district court satisfied the oral pronouncement requirement").

*B. Legal Framework*

"The district court must orally pronounce a sentence to respect the defendant's right to be present for sentencing," *Diggles*, 957 F.3d at 556, and that requirement applies with full force to all "discretionary" conditions of supervised release, *id*. at 557; *see id*. at 559 ("If a condition is discretionary, the court must pronounce it to allow for an objection."); *see also Martinez*, 47 F.4th at 366-67. The supervised release conditions

at issue here are "discretionary" conditions—meaning, conditions not mandated by statute—and therefore are subject to *Diggles'* pronouncement requirement. *See* 957 F.3d at 559, 563 (citing 18 U.S.C. § 3583(d)).

The pronouncement requirement is not a meaningless formality." *Id.* at 560. To the contrary, "it is part of the defendant's right to be present at sentencing, which in turn is based on the right to mount a defense," and "[i]t is thus satisfied when a district judge enables that defense by giving the defendant notice of the sentence and an opportunity to object." *Id.* "The opportunity to object exists—and thus a district court satisfies the pronouncement requirement—'when the court notifies the defendant at sentencing that conditions are being imposed.'" *Martinez*, 47 F.4th at 367 (citation omitted).

Pronouncement can take different forms, and "word-for-word recitation of each condition" is not required. *Diggles*, 957 F.3d at 562. For example, under the proper circumstances, oral in-court adoption of proposed conditions listed in a written document (including a PSR) can satisfy the pronouncement requirement. *See id.* at 556-61 & n.5. "A court may do so by orally stating the condition or by reference to a list of

recommended supervised release conditions from a court-wide or judge-specific standing order, or some other document." *Martinez*, 47 F.4th at 367. "However, 'the mere existence of such a document is not enough for pronouncement.'" *Id.* (quoting *Diggles*, 957 F.3d at 561 n.5). Thus, in pronouncing sentence, the sentencing court errs "in failing to clarify 'the standard conditions' to which it referred at the sentencing hearing or to expressly locate, identify, and adopt by reference a specific written list of conditions." *Id.* If it fails to do so, the conditions "must be stricken." *Id.*

As this Court has explained, "*Diggles* clearly set forth proper procedure by which to satisfy the pronouncement requirement." *United States v. Chavez*, No. 20-50550, 2022 WL 767033, at *6 (5th Cir. Mar. 14, 2022) (unpublished). "The surest way to abide by the pronouncement requirement is to include the list of all such conditions in the PSR . . . *and to explicitly state at sentencing that the court is imposing the conditions recommended in the PSR after confirming the defendant has read the conditions*." *Id.* (emphasis added). "This ensures that the defendant has adequate notice and an opportunity to object." *Id.* "To be sure, the district court need not recite the entire list of what are often called 'standard conditions' at sentencing." *Id.* "Rather, stating

something as simple as 'The Court imposes the standard conditions, *as listed in the PSR'* or '*as listed in the district court's standing orde*r' is sufficient." *Id.* (emphasis added). As this Court made claer in *Chavez*, it "expect[ed] that district courts will adhere to these straight-forward procedures going forward." *Id.*

"If the in-court pronouncement differs from the judgment that later issues, what the judge said at sentencing controls." *Diggles*, 957 F.3d at 557. "When there is a discrepancy between the oral pronouncement and the written judgment, [the Court] must first determine whether such discrepancy 'is a conflict or merely an ambiguity that can be resolved by reviewing the rest of the record.'" *United States v. Prado*, 53 F.4th 316, 318 (5th Cir. 2022) (quoting *United States v. Mireles*, 471 F.3d 551, 558 (5th Cir. 2006)). "A conflict occurs '[i]f the written judgment broadens the restrictions or requirements of supervised release from an oral pronouncement,' or imposes more burdensome conditions." *Id.* (quoting *Mireles*, 471 F.3d at 558, and citing *United States v. Bigelow*, 462 F.3d 378, 383 (5th Cir. 2006)). "In the event of a conflict, the written judgment must be amended to conform with the oral pronouncement, which controls." *Id.* (citation omitted).

### C. *The district court failed to orally pronounce "the standard conditions," and, therefore, they must be stricken from the written judgment.*

The district court's reference to "the standard conditions of supervised release" failed to comply with *Diggles*'s pronouncement requirement. ROA.149-50. Indeed, under this Court's precedent, "the district court erred in failing to clarify 'the standard conditions' to which it referred at the sentencing hearing or to expressly locate, identify, and adopt by reference a specific written list of conditions" as being contained in the PSR. *Martinez*, 47 F.4th at 367. The district court did *not* state something like "[t]he Court imposes the standard conditions, *as listed in the PSR." Chavez*, 2022 WL 767033, at *6 (emphasis added).

The subsequent inclusion of 13 unpronounced "standard conditions" in Mr. Keelen's written judgment obviously "broaden[ed] the restrictions or requirements of supervised release from an oral pronouncement," and "impose[d] more burdensome conditions," resulting in a conflict. *Prado*, 53 F.4th at 318 (cleaned up). "It necessarily follows that [the standard conditions] must be stricken." *Martinez*, 47 F.4th at 367-68 (citation omitted).

### *D. Even if the standard conditions had been validly pronounced, the written judgment and the PSR still impermissibly conflict.*

Even if the district court had validly pronounced the standard conditions as contained in the PSR—though, as explained above, it did not—partial vacatur and remand to amend the judgment would still be required because four conditions contained in the written judgment also conflict with the PSR. Specifically, standard conditions four, seven, and eight in the written judgment were not included in the PSR at all. *Compare* ROA.200-01 *with* ROA.106.[3] And standard condition six in the written judgment is broader because it requires more onerous notification requirements than the PSR. *Compare* ROA.200 (paragraphs 110 & 112) *with* ROA.106.[4]

Thus, all four conditions result in a conflict and must be removed from the written judgment. *See, e.g.*, *Prado*, 53 F.4th at 318 (holding that

[3] Those conditions are "the defendant shall support his or her dependents and meet other family responsibilities"; "the defendant shall refrain from excessive use of alcohol"; and "the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered." ROA.106 (conditions four, seven, and eight).

[4] The condition is more strict because it omits a proviso that "[i]f notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change" from the requirement that Mr. Keelen "shall notify the probation officer at least ten days prior to any change in residence or employment."

a condition "which requires [defendant] to refrain from excessive use of alcohol" but "was not orally pronounced . . . must be removed from the written judgment"); *United States v. Castillo*, No. 19-10649, 2021 WL 4237553, at *4 (5th Cir. Sept. 16, 2021) (unpublished) (explaining that "a shall-not-frequent [certain places] condition 'broadens the pronounced requirements of supervised release' beyond those stated in [a] do-not-associate [with certain persons] condition" because "[e]ven given some redundancy, practically speaking, avoiding certain *people* is distinct from, and perhaps more straightforward than, avoiding certain *places*") (emphasis in original); *Bigelow*, 462 F.3d at 383-84 (holding that a condition requiring prior approval conflicted with a condition merely requiring contemporaneous or subsequent notification).

*E. The special search condition in the written judgment must be conformed to match the oral pronouncement.*

Finally, the special search condition in the district court's written judgment added a requirement that was not orally pronounced: "The defendant shall warn any other residents or occupants that the premises may be subject to searches pursuant to this condition." *Compare* ROA.150 *with* ROA.107 (special condition three). Because that added requirement broadens the condition and imposes a more burdensome condition, it

conflicts with the oral pronouncement and must also be stricken so that the written judgment conforms to the oral pronouncement.

## CONCLUSION

For the foregoing reasons, Mr. Keelen's conviction must be vacated and his indictment dismissed. Alternatively, this Court should vacate in part and remand for entry of an amended judgment that conforms to the district court's oral pronouncement of supervised release conditions by excising 13 unpronounced supervised release conditions (Standard Conditions 1 through 13) and conforming the special search condition to the oral pronouncement.

Respectfully submitted,

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

*/s/ Steven E. Spires*
STEVEN E. SPIRES
Research and Writing Attorney
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
steven_spires@fd.org

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 25, 2025, the foregoing Appellant's Brief was filed with the Clerk of Court via the electronic filing system, which will send an electronic Notice of Docket Activity to the following Filing Users:

Kevin G. Boitmann, kevin.boitmann@usdoj.gov,
James N. Ollinger, james.ollinger@usdoj.gov, and
Megan Roberts, megan.roberts@usdoj.gov,
Assistant United States Attorneys.

"The court's electronic Notice of Docket Activity constitutes service of the filed document on all Filing Users." 5TH CIR. R. 25.2.5.

*/s/Steven E. Spires*
STEVEN E. SPIRES
Research and Writing Attorney

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,652 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3. This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a)(5), 5th Cir. R. 25.2.13, and Fed. R. Crim. P. 49.1, because it has been redacted of personal data identifiers.

4. This electronic submission is an exact copy of the paper document, in compliance with 5th Cir. R. 25.2.1.

5. This brief is free of viruses because it has been scanned for viruses with the most recent version of Symantec Endpoint Protection, in compliance with 5th Cir. ECF Filing Standard A(6).

*/s/ Steven E. Spires*
STEVEN E. SPIRES
Research and Writing Attorney
Dated: August 25, 2025